**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HARRY STYLES, | |
| Plaintiff, | Case No. 23-cv-00137 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

## COMPLAINT

Plaintiff Harry Styles ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other merchandise, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

2

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff Harry Styles, a resident of London, United Kingdom, is a singer, songwriter, and actor.

5.      Harry Styles rose to fame as a contestant on the United Kingdom's The X Factor television competition show in 2010 and later as a member of the wildly popular band, One Direction, during the years 2011-2015. In 2016, Harry Styles launched his solo career, releasing his self-titled debut album *"Harry Styles"* in 2017.

6.      The *"Harry Styles"* album debuted at number one on the Billboard 200 albums chart in several countries, including the United States. The album was highly regarded by several sources as one of the best albums of the year 2017. Harry Styles: Live on Tour received overwhelmingly positive reviews and was a top selling worldwide tour in terms of gross revenue and ticket sales.

7.      Since the start of his solo career, Harry Styles has released other critically acclaimed albums such as "Fine Line" and "Harry's House," both debuting at number one on the Billboard 200 albums chart in the United States and ranking among the best albums in their respective years of release. Harry Styles' newest album, "Harry's House" became Harry Styles' biggest debut in the United States and the second-largest opening week for an album in 2022.

8.      Beginning in September 2021, Harry Styles embarked on Harry Styles: Love On Tour in association with his second and third albums. This tour is ongoing with several concert legs spanning over the course of twenty-two months. Harry Styles is now the only soloist to spend at least fifteen weeks at No. 1 on the Billboard Hot 100, which measures sales, streams, and radio airplay.

3

9.      Harry Styles has also been the subject of extensive unsolicited publicity resulting from his popularity and fame, including the documentary *Harry Styles: Behind the Album* on Apple TV, as well as several accolades such as a Grammy Award for Best Pop Solo Performance in 2021, an American Music Award for Favorite Pop/Rock Album in 2022, ARIA Music Awards for Best International Artist in 2017 and 2020, an Art Directors Guild Award for Short Format: Web Series, Music Video or Commercial in 2021, a Brit Award for British Single of the Year in 2021, and numerous other awards and nominations since the beginning of his career.

10.      Products sold under the Harry Styles brand include clothing, headwear, and various accessories. Harry Styles branded products are distributed and sold to consumers throughout the United States, including in Illinois, through various affiliates, exclusive merchandise pop-up shops, and through the hstyles.co.uk (shopus.hstyles.co.uk) webstore.

11.      Plaintiff incorporates its distinctive marks in the design of the various Harry Styles products.  As a result of long-standing use, Plaintiff owns common law trademark rights in his trademarks. Plaintiff has also registered his trademarks with the United States Patent and Trademark Office. Harry Styles products often include at least one of Plaintiff's registered trademarks. Plaintiff uses his trademarks in connection with the marketing of the Harry Styles products, including the following marks which are collectively referred to as the "HARRY STYLES Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 5,688,195 | HARRY STYLES | For: Pre-recorded CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, |

4

|  |  | gameshows, drama, comedy, action, adventure, animation and documentaries; sound, music, image, data and video recordings recorded on CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; multimedia productions recorded on CD, DVD, DAT, DAC, HD discs, 3D discs, mini-discs, records, tapes, cassettes, discs and flash drives, or downloadable from the Internet, all featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; motion picture films featuring drama, comedy, action, adventure, animation and documentaries; television films and programmes recorded on CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; visual recordings and audiovisual recordings featuring animations; 3D motion picture films, television films and programmes, and animations, all recorded on CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; radio programmes recorded on CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical |
|---|---|---|

| | | |
|---|---|---|
| | | entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; pre-recorded recording materials used for storage and transmission of digital and analogue data, images, sounds and recordings, namely, CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; pre-recorded audio and/or video media, CDs, CDRs, DVDs, DVDRs, DATs, DACs, HD discs, 3D discs, mini-discs, records, tapes, cassettes, discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; pre-recorded laser-read discs for reproducing, storing, transmitting and playing sound, images, music, data or video featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; pre-recorded optical-read discs for recording, reproducing, storing, transmitting and playing sound, images, music, data or video featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; pre-recorded USB flash drives for recording, reproducing, storing, transmitting and playing sound, images, music, data or video featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable media, namely, audio, image, data and video files provided |

|  |  | from the Internet featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable audio or sound files in MP3 format; audio and/or video files in electronic format provided from the Internet featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable video files in MP4 format featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable MP4 videos featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; application software for mobile devices, tablet computers, mobile computers, handheld computers and smartphones, namely, mobile gaming and content applications for mobile devices, tablet computers, mobile computers, handheld computers and smartphones; mouse pads; downloadable digital music or sound files provided from the Internet featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable digital video, image, film and TV files and programmes provided from the Internet featuring music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable digital video, image, film and TV files and programmes provided from MP4 web sites on the Internet featuring music, musical recordings, musical performances, musical entertainers, motion picture films, |
|---|---|---|

| | | artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; refrigerator magnets; downloadable electronic media in the nature of books, newsletters, magazines, periodicals and newspapers in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; publications downloaded in electronic form from the Internet in the nature of books, newsletters, magazines, periodicals and newspapers in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable electronic publications provided from databases or the Internet in the nature of books, newsletters, magazines, periodicals and newspapers in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; e-books, namely, electronic books downloadable from the Internet in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; audio books on CD, mini-disc, record, cassette, disc or flash drives in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; talking children's books; downloadable printed matter in electronic form in the nature of books, magazines, brochures, periodicals, catalogues, newsletters and newspapers, all in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, |
|---|---|---|

concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable electronic publications in the nature of magazines, periodicals and newspapers in the fields of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; downloadable photographs and stills in electronic form; downloadable photographs and still images; sunglasses; eyewear; photographic and photography apparatus; photographic cameras in class 009.

For: Printed matter, namely, magazines, newspapers, newsletters, books, brochures, flyers, pamphlets, posters, decals, bumper stickers, postcards, pictures, diaries, souvenir event programs, printed event and concert tickets, printed event and printed concert VIP tickets, laminated tickets and laminated VIP tickets, calendars, photographs, signed photographs, picture books, songbooks, sheet music, cardboard and paper badges, paper flags, record, tape, cassette, CD, CDR, DVD, DVDR, DAT, DAC, HD and 3D disc paper labels, inserts and inlays in printed matter, all featuring information relating to or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, game shows, drama, comedy, action, adventure, animation and documentaries; photographs featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, game shows, drama, comedy, action, adventure, animation and documentaries; stationery; artists' materials, namely, pens, ballpoint pens, fountain pens, pencils, drafting rulers, erasers, pencil sharpeners, and pen and pencil cases; paint brushes; instructional and teaching material, namely, printed rules of play for playing board games, card games, travel games, electronic games and puzzles in class 016.

For: Clothing, namely, T-shirts, shirts, jackets, sweatshirts, hooded tops, hooded sweatshirts, pullovers, jumpers, shorts,

| | | boxer shorts, boxer briefs, underwear, underclothes, under garments, socks, scarves, dressing gowns, pyjamas, dungarees, braces, ties, lingerie, hosiery, bathing costumes, bathing suits, bathing trunks, bathrobes, gloves, jeans, kilts, nightwear, pajamas, trouser suits, slacks, sleeping garments, sleepwear, suits, swim wear, swimsuits, trousers, tuxedos and waistcoats, legging, jeggings, namely, pants that are partially jeans and partially leggings, baby bibs not of paper, baby bodysuits; baby bottoms, baby tops, baby rompers, belts, Bermuda shorts, bikinis, blazers, blouses, body shapers, bomber jackets, bras, briefs, cagoules, camisoles, cargo pants, coats, costumes for use in role-playing games, costumes for use in children's dress up play, crop pants, crop tops, dance costumes, dresses, dressing gowns, housecoats, dungarees, ear bands, ear muffs, ear warmers, evening dresses, evening gowns, foundation garments worn around the midsection or thighs to keep the stomach in and create a slimming effect, G-strings, Halloween costumes, infant and toddler one piece clothing, infant sleepers, infantwear, knee highs, knickers, ladies' underwear, skirts, miniskirts, negligees, night gowns, nightshirts, nightgowns, nighties, nightwear, panties, pants, stockings, suspenders, play suits, polo shirts, rain wear, school uniforms, tankinis, thongs and tights, footwear, namely, footwear for men, footwear for women, footwear not for sports, shoes, canvas shoes, sneakers, boots, slippers and flip-flops, beach footwear, beach shoes, boots, booties, dance shoes, dance slippers, moccasins, pumps, headgear, namely, hats, caps, beanies, skull caps, skullies, bandanas and berets, children's headwear, hats for infants, babies, toddlers and children in class 025.<br><br>For: Entertainment in the nature of participation in musical recordings, musical performances, performances by a musical groups and members thereof, celebrity interviews, performance of spoken word, participation in artistic performances, participation in concerts, appearances by a celebrity, appearances by a professional entertainer, participation in gameshows, participation in drama, participation in comedy, participation in action, participation in adventure, participation in animation, participation in documentaries, and participation in fashion shows, and entertainer services, namely, live, televised and movie appearances by a singer, performing artist and professional entertainer; music writing; music composition; song writing; score writing; score composition; composition of |

| | | |
|---|---|---|
| | | soundtracks; writing of soundtracks; music production services; production of music, musical recordings, musical performances and concerts; music concert services; performance of, and participation in, music, musical recordings, musical performances and concerts; music concert services; production and distribution services in the field of sound and/or visual recordings and entertainment; audio production services, namely, creating and producing music, musical recordings, musical events, festivals, musical performances and musical concerts; provision and production of, and participation in, live entertainment, live performances and live shows; production of audio/visual presentations, namely, creating and producing music, musical recordings, musical events, festivals, musical performances and musical concerts; arranging of music performances, music shows and musical entertainment; services providing entertainment in the form of live musical performances; performance of musicals; arranging and production of musical events; arrangement and performance of dance, music and drama; radio and television entertainment services, namely, live and pre-recorded appearances by a singer, performing artist and professional entertainer; audio and video recording services; rental of sound and video recordings and sound and video recording apparatus; organisation of entertainment performances via radio and television; organisation of competitions, namely, entertainment in the nature of competitions in the field of music where entry is by personal attendance, mail, email, telephone, text message or via the Internet; production, post-production, presentation, distribution and rental of television and radio programmes, of films and of sound and video recordings; recording studio services; production and post-production of entertainment; production and post-production services in relation to films, television programmes, radio programmes, animations, audio, video and cinematographic recordings; audio, music, film and video creation, writing, scripting, directing, production, post-production, mixing, re-mixing, editing and recording services; creation, writing, scripting, directing, production, post-production, recording, mixing, re-mixing and editing studio services in the field of music, video, films, television programmes, radio programmes, animations and cinematographic recordings; audio production and post-production services; video production and post-production services; motion picture film production and post-production services; animation production and post-production services; television |

|  |  | programme production and post-production services; production and post-production of sound recordings; providing on-line non-downloadable publications in the nature of magazines, periodicals and newspapers featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital sound, music, data and video recordings, not downloadable, from the Internet featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital sound, music, data and video recordings, not downloadable, from MP3 and MP4 Internet websites featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital sound recordings, not downloadable, from the Internet; providing digital sound recordings, not downloadable, from MP3 Internet websites featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital music and sound recordings, not downloadable, from the Internet featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital music and sound recordings, not downloadable, from MP3 Internet websites featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, |

| | | |
|---|---|---|
| | | adventure, animation and documentaries; providing digital video, image, film, animation, radio and TV recordings and programmes, and cinematographic recordings, not downloadable, from the Internet featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; providing digital video, image, film, animation, radio and TV recordings and programmes, and cinematographic recordings, not downloadable, from MP4 Internet websites featuring or in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation and documentaries; provision of information relating to production and post-production services in the field of music, video, films, animations, television programmes, radio programmes and cinematographic recordings; photography services; on-line library services, namely, providing electronic library services featuring photographs and pictures via an on-line computer network; photographic film editing; photographic composition for others; modelling for artists; performance of sport, and skills related to sport; sports tuition, namely training in the field of physical education; sports training services; coaching in the field of sports; sports entertainment services; arranging and organisation of and participation in sport and sporting activities, events, competitions and tournaments; publication of books; music publishing services; publishing of musical works; publishing services; song publishing; publication of lyrics of songs in book and sheet form; publication of music and music books; provision of information relating to music, musical recordings and musical entertainment; organisation of fashion shows for entertainment purposes in class 041. |
| 5,876,867 | HARRY STYLES TREAT PEOPLE WITH KINDNESS | For: Badges of precious metal; precious metals and their alloys; jewellery, precious stones; horological and chronometric instruments in class 016.<br><br>For: Journals, namely, printed journals in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, |

appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation, documentaries, fashion, health, beauty and lifestyle; notebooks; printed matter, namely, magazines, newspapers, newsletters, books, brochures, flyers, pamphlets, posters, decals, bumper stickers, postcards, pictures, diaries, souvenir event programs, printed event and concert tickets, printed event and printed concert VIP tickets, laminated printed event and concert tickets and laminated VIP printed event and concert tickets, calendars, photographs, signed photographs, picture books, songbooks, sheet music, cardboard and paper badges, paper flags, record, tape, cassette, CD, CDR, DVD, DVDR, DAT, DAC, HD and 3D disc paper labels, inserts and inlays, all featuring information in the field of music, musical recordings, musical performances, musical entertainers, motion picture films, artistic performances, concerts, appearances by a celebrity or celebrities, appearances by a professional entertainer, gameshows, drama, comedy, action, adventure, animation, documentaries, fashion, health, beauty and lifestyle; stationery in class 016.

For: Tote bags; leather and imitations of leather; trunks, being luggage, and travelling bags; umbrellas, parasols in class 018.

For: Clothing, namely, T-shirts, shirts, jackets, sweatshirts, hooded tops, hooded sweatshirts, pullovers, jumpers, shorts, boxer shorts, boxer briefs, underwear, underclothes, under garments, socks, scarves, dressing gowns, pyjamas, dungarees, suspenders, ties as clothing, lingerie, hosiery, bathrobes, gloves, jeans, kilts, nightwear, slacks, sleeping garments, sleepwear, suits, swim wear, swimsuits, trousers, tuxedos and waistcoats, leggings, jeggings, namely, pants that are partially jeans and partially leggings, baby clothing, namely, baby sleeping garments, baby sleepwear, baby bibs not of paper, baby bodysuits, baby bottoms, baby tops, baby romper suits, infant and toddler one piece clothing, infant sleepers, infantwear, and baby play suits, belts, blazers, blouses, body shapers, bomber jackets, cagoules, camisoles, cargo pants, coats, crop pants, crop tops, dresses, ear bands, ear muffs, ear warmers, skirts, tankinis, footwear, namely, footwear for men, namely, athletic footwear and casual footwear, footwear for women, namely, athletic footwear and casual footwear, footwear not for sports, shoes, canvas shoes, sneakers, headgear, namely, hats, caps being

| | | headwear, beanies in class 025.<br><br>For: Hair bands; ornamental novelty badges; embroidered badges, namely, ornamental novelty badges; badges for wear, not of precious metal, namely, ornamental novelty badges; ornamental novelty badges, ornamental novelty buttons and ornamental novelty pins; belt buckles; clothing buttons; novelty buttons; embroidered badges in the nature of ornamental novelty badges, embroidered emblems and embroidered patches for clothing; laces for footwear; ornamental cloth patches in class 026. |

12.     The above U.S. registrations for the HARRY STYLES Trademarks are valid, subsisting, and in full force and effect. The HARRY STYLES Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned. The registrations for the HARRY STYLES Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the HARRY STYLES Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the HARRY STYLES Trademarks included in the above table.

13.     The HARRY STYLES Trademarks are exclusive to Plaintiff and are displayed extensively on Harry Styles products and in Plaintiff's marketing and promotional materials. The Harry Styles brand has been extensively promoted and advertised at great expense. In fact, Plaintiff, or third parties on Plaintiff's behalf, have expended millions of dollars in advertising, promoting, and marketing featuring the HARRY STYLES Trademarks, as well as significant time and other resources. As a result, products bearing the HARRY STYLES Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

14.     The HARRY STYLES Trademarks are distinctive when applied to the Harry Styles products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The HARRY STYLES Trademarks have achieved

tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the HARRY STYLES Trademarks is of incalculable and inestimable value to Plaintiff.

15.     For years, Plaintiff has operated e-commerce webstores where he promotes and sells genuine Harry Styles products at hstyles.co.uk, including apparel and other merchandise. The hstyles.co.uk webstore features proprietary content, images, and designs exclusive to Plaintiff.

16.     Plaintiff's innovative marketing and product designs, combined with the immense popularity of Harry Styles, have made the HARRY STYLES Trademarks famous marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Harry Styles brand have made the HARRY STYLES Trademarks invaluable assets of Plaintiff.

**The Defendants**

17.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking

16

of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of the Harry Styles brand has resulted in significant counterfeiting of the HARRY STYLES Trademarks. Consequently, Plaintiff has an anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), 51 percent of which originated from China and Hong Kong.  *Id.*

20.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's

Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-87.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois.

22.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very

difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the HARRY STYLES Trademarks, and none of the Defendants are authorized retailers of genuine Harry Styles products.

23.    Many Defendants also deceive unknowing consumers by using the HARRY STYLES Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Harry Styles products. Other e-commerce stores operating under the Seller Aliases omit using the HARRY STYLES Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Harry Styles products.

24.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25.    E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.    Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.     Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29.     Defendants are working in active concert to knowingly and wilfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and wilfully used and continue to

use the HARRY STYLES Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

30.     Defendants' unauthorized use of the HARRY STYLES Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered HARRY STYLES Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The HARRY STYLES Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products sold or marketed under the HARRY STYLES Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the HARRY STYLES Trademarks without Plaintiff's permission.

34.     Plaintiff is the exclusive owner of the HARRY STYLES Trademarks. Plaintiff's United States Registrations for the HARRY STYLES Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the

21

HARRY STYLES Trademarks, and are willfully infringing and intentionally using counterfeits of the HARRY STYLES Trademarks. Defendants' willful, intentional, and unauthorized use of the HARRY STYLES Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to his reputation and the goodwill of his well-known HARRY STYLES Trademarks.

37. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

40. By using the HARRY STYLES Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to his reputation and the goodwill of the HARRY STYLES Trademarks and brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the HARRY STYLES Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Harry Styles product or is not authorized by Plaintiff to be sold in connection with the HARRY STYLES Trademarks;

   b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Harry Styles product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the HARRY STYLES Trademarks;

   c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the HARRY STYLES Trademarks and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the HARRY STYLES Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the HARRY STYLES Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HARRY STYLES Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the HARRY STYLES Trademarks;

5) That Plaintiff be awarded his reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

24

Dated this 10th day of January 2023.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Berel Y. Lakovitsky
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
blakovitsky@gbc.law

*Counsel for Plaintiff Harry Styles*